UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ARIANA MURRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 12-11727-FDS |
| | ) | |
| CRISTINE PETRUZZIELLO, RICK FRAMPTON, MICHAEL McHALE, JOHN McKENNA, ROGER ENNIS, ANDREW YOUNG, ROBERT BORGES, MICHAEL CROSBY, OFFICER JOHN DOE, and the CITY OF LYNN, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PLAINTIFF'S MOTION TO DISMISS

**SAYLOR, J.**

This is a civil rights action by a *pro se* plaintiff arising under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, § 11(1).  Plaintiff Ariana Murrell alleges that officers of the Lynn Police Department and three Lynn building inspectors violated her rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.  She also brings claims against them for abuse of process, malicious prosecution, false imprisonment, emotional distress, and invasion of privacy.[1]

---

[1] Plaintiff's claim for invasion of privacy sounds only against the John Doe defendant officer.  He was never identified and thus did not join in the other officer defendants' motion for summary judgment.

On April 26, 2013, the Lynn Police Department defendants—Cristine Petruzziello, Rick Frampton, Michael McHale, John McKenna and Michael Crosby—moved for summary judgment, asserting qualified immunity. Plaintiff did not timely respond, purportedly due to her inability to procure counsel. Instead, on July 8, plaintiff filed a motion to voluntarily dismiss the complaint pursuant to Fed. R. Civ. P. 41(a). The defendant officers opposed the motion as to the non-prejudicial effect of the proposed dismissal, contending that they were entitled to a dismissal of the claims against them with prejudice, because their motion for summary judgment was meritorious and no opposition had been filed. The Court agrees and will decide the unopposed motion for summary judgment as to those defendants.

For the reasons set forth below, the motion for summary judgment will be granted.

**I.      Background**

Typically, when a party moves for summary judgment, this Court will view "the facts in the light most favorable to the non-moving party." *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 444 (1st Cir. 2001). Where, however, the motion is unopposed, the "[m]aterial facts of record set forth . . . by the moving party . . . will be deemed for the purposes of the motion to be admitted." Local Rule 56.1; *see NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7 (1st Cir. 2002).

On the morning of February 16, 2009, Lynn police officer Michael Crosby interviewed Ramon Nunez. An upset and tearful Nunez reported that he had been sexually abused, raped, sodomized, and struck with a whip by plaintiff Ariana Murrell. Crosby made a written report of the interview. (*See* Mot. for S.J. at Ex. E).

Later that day, Lynn police detective Cristine Petruzziello, who was part of the department's domestic violence/sexual assault unit, reviewed Crosby's report. She then sought an extended interview with Nunez. Nunez agreed to be further interviewed and for his statements to be recorded. The ensuing interview lasted two hours, during the course of which Nunez repeatedly broke down crying while recounting being anally raped, otherwise sexually assaulted, and assaulted with a whip by Murrell, with whom he lived at 35 Baltimore Street, Number 1, Lynn. Nunez also produced pictures, taken with his cellular phone, of various sexual devices and restraints that he claimed were used on him during the assaults. Petruzziello made a written report of the interview. (*See* Mot. for S.J. at Ex. D).

Based upon the information obtained from the interviews with Nunez, Petruzziello determined that she had probable cause to arrest Murrell for sodomy, rape, assault and battery with a dangerous weapon, and domestic assault and battery. She consulted with her supervisor, Lieutenant Reddy, and then applied for an arrest warrant for Murrell. She also applied for a search warrant for the premises located at 35 Baltimore Street, Number 1, Lynn. Petruzziello did not consult with defendants Frampton, McHale, McKenna, or Crosby before applying for the warrants. Both warrant applications were approved by a Clerk-Magistrate of the Lynn District Court.

The search warrant resulted in the seizure of fourteen items of a sexual nature from Murrell's house, including a whip, sexual devices, and various restraints. None of the officers named as defendants were involved in any decisions regarding the prosecution of Murrell.

## II.     Analysis

### A.     Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Plaintiff's failure to respond to defendants' motion "does not in itself justify [granting] summary judgment." *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1516 (1st Cir. 1991) (quotation marks and citation omitted). "Rather, the court must determine whether summary judgment is 'appropriate,' which means that it must assure itself that the moving party's submission shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *NEPSK,* 283 F.3d at 7. Yet, where the non-moving party fails to question the moving party's statement of facts, those facts may be accepted as true. *See id.* For that reason, "[i]n most cases, a party's failure to oppose summary judgment is fatal to its case." *Perez-Cordero v. Wal-Mart Puerto Rico*, 440 F.3d 531, 534 (1st Cir. 2006).

### B.     Qualified Immunity for Civil Rights Claims

The police officer defendants contend that they are entitled to summary judgment on the basis of qualified immunity. Specifically, they contend that a reasonable officer would have

concluded that there was probable cause to arrest plaintiff and apply for a search warrant of her home. They further contend that the officers were no part of the prosecutorial decisions made after the arrest. In sum, they contend that because the officers actions were objectively reasonable, they are protected by qualified immunity.

The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has articulated a two-part test for determining qualified-immunity. *Pearson v. Callahan*, 555 U.S. 223 (2009); *see also Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Callahan*, 555 U.S. at 232-236.

Defendants concede that the right to be free from arrest without probable cause was clearly established at the time of plaintiff's arrest. They also do not dispute that the right to be free from an unreasonable search was clearly established at the time of the search of plaintiff's home. They contend, however, that there was probable cause to arrest plaintiff, and, therefore, neither the arrest nor the search, which were both conducted pursuant to warrants, violated her constitutional rights.

In general, an officer's good-faith reliance on information provided by a victim, even if it turns out to be false, may provide a valid basis for probable cause. *See Forest v. Pawtucket Police Dep't.*, 377 F.3d 52, 57 (1st Cir. 2004) ("[P]olice officers can justifiably rely upon the

credible complaint by a victim to support a finding of probable cause"). Furthermore, the reasonableness of that reliance is amenable to summary judgment unless there are disputes as to material facts. *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 8-9 (1st Cir. 2004) (discussing *B.C.R. Transport Co. v. Fontaine*, 727 F.2d 7, 10 (1st Cir. 1984)). Here, defendants relied on the statements given by the alleged victim in the course of two interviews, lasting more than two hours. Nothing in the record indicates that the officers had any reason to doubt the veracity of Nunez's statements or even question his motives; in fact, his distraught demeanor during the interviews suggests that he was recounting real events. *See United States v. Santana*, 342 F.3d 60, 66 (1st Cir. 2003) ("Failure to investigate . . . does not evidence a reckless disregard for the truth."). Accordingly, a reasonable officer would have concluded that there was probable cause to arrest plaintiff and could reasonably rely on the magistrate's issuance of the warrant in carrying out the arrest. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

To be valid, a "[search] warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element." *United States v. Ribeiro*, 397 F.3d 42, 48 (1st Cir. 2005) (quotation omitted); *see also United States v. Rodrigue*, 560 F.3d 29, 33 (1st Cir. 2009). The nexus element can be inferred from the type of crime, the nature of the items being sought, the extent of an opportunity for concealment, and normal inferences as to where a criminal would hide evidence of such a crime. *United States v. Thompson*, 630 F. Supp. 2d 139, 143 (D. Mass. 2009) (quoting *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999). Applying the nexus requirement requires "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Given the wide variety of factual contexts in which the probable cause requirement applies, this is necessarily a fact-dependent inquiry.  In essence, however, the nexus requirement is satisfied if a person of reasonable caution has reason to believe that evidence of a crime will be found at the place to be searched.  *Rodrigue*, 560 F.3d at 32.

As the basis for the search warrant application at issue defendants relied on the same statements of the victim that supported the arrest warrant.  As described above, defendants were entitled to rely on those statements, and a reasonable officer would have believed there to be probable cause to arrest plaintiff.  Therefore, probable cause existed as to the first element required for the issuance of a search warrant—commission of a crime.  As to the second element—nexus between the location to be searched and the crime—the victim indicated in his interviews that a great majority of the sexual assaults he complained of took place at the premises to be searched—35 Baltimore Street, Number 1, Lynn.  He also provided the interviewing officers with pictures from his cellular phone of the instruments used to effectuate the assaults.  These statements and pictures would give a reasonable officer reason to believe that evidence of a crime would be found 35 Baltimore Street, which is all that the nexus element requires.  *Rodrigue*, 560 F.3d at 32.  Accordingly, a reasonable officer would have concluded that there was probable cause to search the premises at 35 Baltimore Street and could reasonably rely on the magistrate's issuance of the warrant in carrying out the search.  *Accord Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

For the foregoing reasons, the Court finds that there was probable cause to arrest plaintiff

and search her home based on the material facts presented in the defendants' unopposed motion for summary judgment. Accordingly, the officer defendants are entitled to qualified immunity as to the claims that they violated plaintiffs' civil rights and summary judgment will thus be granted as to those claims.[2]

### C. False Imprisonment

In Massachusetts, false imprisonment is defined as the "intentional and unlawful confinement of a person, either directly or indirectly, of which the person confined is conscious or is harmed by such confinement." *Jonielunas v. City of Worcester Police Dep't*, 338 F. Supp. 2d 173, 177 (D. Mass. 2004). A police officer is liable for false imprisonment if, without probable cause, he arrests, or causes the arrest of, the plaintiff. *See id.* at 177. This is essentially the same as the Fourth Amendment standard for unlawful arrest.

Because summary judgment will be granted in favor of the officer defendants as to the civil rights claims based on unlawful arrest, it will also be granted as to the false imprisonment claim.

### D. Malicious Prosecution

To establish a claim of common-law malicious prosecution, plaintiff must show "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendants; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (citing *Correllas v. Viveiros*, 410 Mass. 314, 318 (1991)). To

---

[2] Qualified immunity applies to plaintiff's federal and state claims for violations of her civil rights. The Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11(1), affords qualified immunity to public officials to the same extent that 42 U.S.C. § 1983 does. *Rodriques v. Furtado*, 410 Mass. 878, 881, 885 (1991).

transform malicious prosecution into a claim cognizable under § 1983, "the plaintiff also must show a deprivation of a federally-protected right." *Nieves*, 241 F.3d at 53.

Here, summary judgment is appropriate because (1) as noted above, there was probable cause to believe that plaintiff had committed the charged offenses; (2) there is no evidence in the record that any of the officer defendants were involved in the decisions regarding plaintiff's prosecution; and (3) there is no evidence in the record that any of the officer defendants acted with malice or other improper motive. *See Franco-de Jerez v. Burgos*, 876 F.2d 1038, 1040 (1st Cir. 1989) (holding that the filing of a criminal complaint does not violate the Constitution if the prosecutor had probable cause to believe the defendant had committed the crime). Accordingly, summary judgment will be granted in favor of the officer defendants as to the claim of malicious prosecution.

### E. Abuse of Process

To establish a claim of abuse of process, plaintiff must show (1) that "process" was used against her (2) for an "ulterior or illegitimate purpose" and (3) that some harm occurred as a result. *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 406 (2000).[3] "The essence of this tort is the malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Carroll v. Gillespie*, 14 Mass. App. Ct. 12, 26 (1982) (quotation and internal citation omitted).

There is no evidence in the record to suggest that any of the officer defendants acted with an "ulterior or illegitimate purpose" in pursuing the criminal prosecution. As noted, there is also

---

[3] "More precisely the word 'process' in the context of abuse of process means causing papers to be issued by a court to bring a party or property within its jurisdiction." *Vittands*, 49 Mass. App. Ct. at 406 n.9 (quotation and internal citation omitted).

no evidence in the record that any of the officer defendants were even involved in the decisions regarding plaintiff's prosecution. Accordingly, summary judgment will be granted in favor of the officer defendants as to the claim of abuse of process.

### F.     Emotional Distress

To establish a claim for intentional infliction of emotional distress ("IIED"), plaintiff must show that (1) defendants either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe and of a nature that no reasonable person could be expected to endure it. *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976).[4]

Conduct is "extreme and outrageous" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987). This standard may require more than is necessary to state a claim under § 1983. *See, e.g.*, *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 319 (D. Mass. 1997) ("[T]he mere fact that the defendants' conduct may turn out to be violative of the plaintiff['s] civil rights does not . . . necessitate a finding that the conduct is sufficiently egregious to state a claim for intentional infliction of emotional distress.").

As set forth above, the actions of the officers in this case were objectively reasonable in

---

[4] Although Count V of the complaint is simply titled "emotional distress" without any indication as to whether it is a claim for negligent infliction of emotional distress or intentional infliction of emotional distress, the allegations supporting it track the elements of intentional infliction of emotional distress and include the statement that "defendants' conduct was done intentionally or recklessly." Accordingly, the Court interprets the claim as one for intentional infliction of emotional distress.

the context of the Fourth Amendment, and so they certainly did not constitute the sort of targeted, malicious conduct that is required to meet the high bar for an IIED claim. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996). Accordingly, summary judgment will be granted in favor of the officer defendants as to the claim of intentional infliction of emotional distress.

### III.     Conclusion

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. Plaintiff's motion to voluntarily dismiss the complaint is DENIED as to defendants Petruzziello, Frampton, McHale, McKenna, and Crosby, and GRANTED as to the remaining defendants. The dismissal as to the remaining defendants is without prejudice.

**So Ordered.**

                                        /s/ F. Dennis Saylor
                                        F. Dennis Saylor IV
                                        United States District Judge

Dated: July 17, 2013